IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 4:18-cv-460 |
| CHERLYNN HARRINGTON, | ) | |
| LINDA MCCLENDON, and | ) | |
| GOODLINK, LLC D/B/A | ) | |
| GOODLINK TAX SERVICES, | ) | |
| GOODLINK, INC. D/B/A | ) | |
| GOODLINK TAX SERVICES, | ) | |
| | ) | |
| Defendants. | | |

## COMPLAINT FOR PERMANENT INJUNCTION AND OTHER RELIEF

Plaintiff, the United States, for its complaint against Cherlynn Harrington, Linda McClendon, Goodlink, LLC. d/b/a Goodlink Tax Services, and Goodlink, Inc. d/b/a Goodlink Tax Services, alleges the following:

### Jurisdiction and Venue

1.      The suit is brought under 26 U.S.C. §§ 7402, 7407, and 7408 to permanently enjoin Cherlynn Harrington ("Harrington"), Linda McClendon ("McClendon"), Goodlink, LLC d/b/a Goodlink Tax Services, and Goodlink, Inc. d/b/a Goodlink Tax Services and all those in active concert or participation with them, from directly or indirectly:

a.      acting as a federal tax return preparer or requesting, assisting in, advising with respect to, or directing the preparation or filing of federal tax returns, amended tax returns, or other related documents or forms for any person or entity other than themselves;

b.      owning, operating, managing, working for, profiting from, receiving fees or remuneration from, volunteering for, or controlling a tax-return-preparation business;

c.      engaging in any other activity subject to penalty under 26 U.S.C. §§ 6694, 6695, 6701, or any other penalty provision in the Internal Revenue Code;

d.      using, maintaining, renewing, obtaining, transferring, selling, or assigning any IRS Preparer Tax Identification Number ("PTIN") and/or IRS Electronic Filing Identification Number ("EFIN"), or any other IRS service or program by which one prepares or files tax returns; and

e.      engaging in any conduct that substantially interferes with the proper administration of the internal revenue laws.

2.      This action has been commenced at the direction of a delegate of the Attorney General of the United States, pursuant to 26 U.S.C. §§ 7402, 7407, and 7408.

3.      Jurisdiction is conferred on this Court by 28 U.S.C §§ 1340, 1345, and 26 U.S.C. § 7402(a).

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), and 26 U.S.C. §§ 7407, 7408 because Harrington and McClendon reside in this judicial district, Goodlink, LLC and Goodlink, Inc. operate in the judicial district, and a substantial part of the actions giving rise to this suit took place in this judicial district.

5.      Harrington and McClendon sometimes conduct business: (1) using the fictitious business name Goodlink registered with the Missouri Secretary of State in 2003; (2) as Goodlink, LLC d/b/a Goodlink Tax Services registered with the Missouri Secretary of State in 2006; and (3) as Goodlink, Inc. d/b/a Goodlink Tax Services registered with the Nevada

- 2 -

16339196.1

Secretary of State in 2007 (hereinafter collectively referred to as "Goodlink"). Goodlink operates out of Harrington's personal residence in St. Louis, Missouri, within this judicial district. Harrington and McClendon list Goodlink Tax Services as the tax preparation firm on returns that they prepare.

## Overview of Defendants' Conduct

6.      Harrington, McClendon, and Goodlink are tax return preparers, as defined by 26 U.S.C. § 7701(a)(36). They prepare tax returns for compensation.

7.      Beginning in 1994 or 1995, Harrington worked as a tax return preparer for Jackson Hewitt Tax Services for at least two years. In 2001, Harrington began preparing tax returns out of her personal residence under the business name Goodlink.

8.      In 2008 or 2009, Harrington completed a bookkeeping course and a professional tax preparer certification program through Universal Accounting. Harrington also completed several college courses at Florissant Valley Community College.

9.      McClendon is Harrington's mother.

10.      McClendon learned to prepare tax returns from a friend over 30 years ago. McClendon completed two tax preparation courses during the 1980s. McClendon also completed a certification course offered by Drake Software, the tax preparation software used by Goodlink.

11.      In 2001, McClendon began preparing tax returns under the business name Goodlink.

12.      McClendon completed one year of college at Harris-Stowe University.

13.      Harrington and McClendon operate a tax return preparation business, Goodlink, that engages in the preparation of false federal income tax returns to generate bogus refunds and charge exorbitant fees, thereby maximizing profits at the expense of the United States Treasury.

16339196.1

14.     Harrington and McClendon together prepared over 1,300 tax returns between 2009 and 2017. Of those tax returns, the vast majority contained a request for a refund. The number of tax returns prepared per year and the percentage requesting a refund are as follows:

| Year | # Tax Returns Prepared | % Claiming Refunds |
|------|------------------------|--------------------|
| 2009 | 174 | 96% |
| 2010 | 176 | 95% |
| 2011 | 165 | 99% |
| 2012 | 151 | 95% |
| 2013 | 177 | 95% |
| 2014 | 155 | 94% |
| 2015 | 150 | 89% |
| 2016 | 115 | 92% |
| 2017 | 117 | 90% |

15.     Many of Harrington and McClendon's customers earn low to moderate incomes and lack knowledge regarding tax law and tax return preparation. Customers often have no knowledge that Defendants prepared and filed false tax returns on their behalf.

16.     The Defendants request on customers' tax returns a refund amount that is not based on the customer's actual income, expenses, deductions, and applicable qualifying credits. Instead, the refund is based on fabricated income, expenses, deductions, and/or credits reported by the Defendants.

16339196.1

17.     Harrington and McClendon prepare federal tax returns that illegally reduce their customers' federal income tax liabilities and generate inflated federal income tax refunds for their customers by, among other things:

    a)     making false claims for the Earned Income Tax Credit;

    b)     circumventing due diligence requirements in order to unlawfully maximize the Earned Income Tax Credit;

    c)     fabricating businesses and business income and/or expenses;

    d)     claiming improper filing statuses such as Head of Household; and

    e)     falsely claiming dependents.

18.     Harrington and McClendon routinely charge their customers unconscionable fees for preparing tax returns with fabricated information and often their customers are unaware they are paying excessively high fees.

## False Claims for the Earned Income Tax Credit and Failure to Comply with Due Diligence Requirements

19.     Harrington and McClendon prepare tax returns that include fraudulent claims for the Earned Income Tax Credit ("EITC") often based on fabricated business income and expenses, bogus or improperly claimed dependents, and/or false filing status.

20.     The EITC is a refundable tax credit available to certain low to moderate income working individuals and families. The amount of the credit is based on the taxpayer's income, filing status, and claimed number of dependents. *See* 26 U.S.C. § 32 and accompanying Treasury Regulations. Because the EITC is a refundable credit, claiming an EITC can, in certain circumstances, reduce a taxpayer's federal tax liability to zero, entitling the taxpayer to a payment from the United States Treasury.

16339196.1

21.     Due to the method used to calculate the EITC, an individual can claim a larger EITC by claiming multiple dependents and, for certain income ranges, individuals with higher earned income are entitled to a larger credit than those with lower earned income. For the tax year 2014, the amount of the credit increased as income increased between $1 and $13,650, and decreased as income increased beyond $17,830. Some tax preparers who manipulate reported income to maximize the EITC refer to this range of earned income corresponding to a maximum EITC as the "sweet spot." For the tax year 2014, the maximum EITC was $6,143 and was available to eligible individuals with three qualifying children who earned income between $14,650 and $17,830.

22.     Because of the way the EITC is calculated, reporting more income, up to a certain point, allows customers to receive a larger refundable credit. Similarly, claiming losses to offset higher income to decrease the total reported income and to fall within the "sweet spot" allows other customers to claim a larger refundable credit.

23.     Harrington and McClendon falsify information to claim the maximum EITC for customers. For example, to bring the customer's reported earned income within the "sweet spot" for the EITC, and depending on a customer's actual income, Harrington and McClendon inflate or fabricate business income reported on a Form Schedule C, "Profit or Loss from Business (Sole Proprietorship)" (used to report income and expenses from a sole proprietorship), in order to fraudulently increase customers' reported earned income, or claim bogus Schedule C expenses to fraudulently decrease customers' reported earned income.

24.     Harrington and McClendon also prepare tax returns reporting false filing status. Specifically, Head of Household filing status is claimed on customers' tax returns to increase the

- 6 -

amount of the customers' standard deduction, when the Defendants know that the customer does not qualify for Head of Household filing status.

25.     Harrington and McClendon improperly use the "Head of Household" filing status which is unavailable to married couples living together.  Often, this is an attempt to increase the claimed EITC; a qualifying couple with at least two children who, together, might otherwise receive a single EITC refund of $5,000 by properly claiming "married, filing jointly," may instead each unlawfully receive a refund of $3,000 or more by both falsely claiming Head of Household or single status and each claiming at least one dependent.

26.     Harrington and McClendon claim dependents who do not actually qualify as dependents on customers' tax returns, and then claim Head of Household filing status to increase the customers' refunds through a fraudulent EITC claim based on the bogus dependents.

27.     Because of the potential for abuse in claiming the EITC, Congress has authorized the Secretary of the Treasury to impose "due diligence" requirements on federal tax return preparers claiming the EITC for their customers. *See* 26 U.S.C. § 6695(g). These "due diligence" requirements obligate the tax return preparer to make "reasonable inquiries" to ensure the customer is legitimately entitled to the EITC. The tax return preparer may not "ignore the implications of information furnished to, or known by, the tax return preparer, and must make reasonable inquiries if the information furnished to the tax return preparer appears to be incorrect, inconsistent, or incomplete." *See* 26 C.F.R. § 1.6695-2(b)(3) (2011). Tax return preparers must also document their compliance with these requirements and keep that documentation for three years. *Id.*

16339196.1

28.     Harrington and McClendon failed to adhere to the due diligence obligations required of tax return preparers. Harrington and McClendon show an intentional disregard for the tax laws and in particular for the due diligence requirements.

### Fabricated Schedule C Business Income and Expenses

29.     Harrington and McClendon prepare tax returns reporting non-existent businesses on bogus Forms Schedule C. Harrington and McClendon also prepare tax returns reporting falsified amounts of income and/or expenses for existing and non-existing Schedule C businesses. On some of these tax returns, Harrington and McClendon report substantial business income but little or no expenses. On other tax returns, Harrington and McClendon report substantial expenses, but little or no income. Harrington and McClendon falsely reported income and/or expenses on customers' Forms Schedule C to improperly bring customers' earned income into the EITC "sweet spot."

30.     The determining factor in Harrington and McClendon's activity is whether the tax return preparer needs to *inflate* a customer's income (or create income when the customer has none) to bring the reported income within the EITC "sweet spot," or to *lower* the taxable income of a customer who has actual income (such as wages reported on a W-2) in order to bring the income within the EITC "sweet spot," or to create a phony business *loss* to offset the customer's wages and falsely reduce the customer's  income tax liability.

### McClendon Made False Claims on Customer's 2008, 2009, and 2010 Federal Income Tax Returns

31.     The IRS examined 51 federal income tax returns filed by 28 different customers for the years 2008, 2009, and 2010 that McClendon prepared. Additional tax was due for each of those 51 tax returns. The average tax deficiency for the examined tax returns was $5,084 per return. The harm to the government for just those 51 tax returns totaled $259,268.

16339196.1

32.     The IRS reduced, or entirely disallowed, the amount of the EITC claimed on 39 of the 51 tax returns. Of the 39 tax returns with EITC adjustments, 34 of the EITC adjustments were based, at least in part, on the  disallowance of claimed Schedule C business expenses.

**Harrington and McClendon Continued to Make False Claims on Customers' Federal Income Tax Returns Since 2011**

33.     Harrington and McClendon's misconduct continued over many years despite their receiving notice, as early as mid-2011, that the IRS audited many of their customers' tax returns resulting in customers having to repay thousands of dollars.

34.     Following the examinations of McClendon's customers' 2008 through 2010 federal income tax returns, the IRS reviewed over 40 tax returns prepared by Harrington and McClendon for the tax years 2011 through 2016. The IRS determined that Harrington and McClendon continued to overstate their customers' refunds, including falsely claiming the EITC, by falsely reporting deductions, income, and/or expenses.

**Examples of False Tax Returns Prepared By Harrington and McClendon For Tax Years 2008 Through 2016**

**Customer 1**

35.      McClendon prepared Customer 1's 2008, 2009, and 2010 federal income tax returns. McClendon is identified as the paid preparer on each of those tax returns.

36.     During these three years, Customer 1 operated a daycare business and payment from the Missouri Department of Social Services was correctly reported on the tax returns.

37.     McClendon falsely reported Schedule C business expenses in excess of $12,000 in each of the three years. Customer 1 did not have the reported expenses, nor did Customer 1 provide McClendon with any information about such expenses. Customer 1 was not aware that the expenses were claimed on his/her tax returns.

- 9 -

38.     McClendon, by reporting fabricated business expenses, fraudulently reduced Customer 1's taxable income in all three tax years. McClendon, by falsely reporting these expenses, improperly increased the EITC she claimed on Customer 1's 2008, 2009, and 2010 tax returns.

39.     The IRS examined Customer 1's 2008, 2009, and 2010 tax returns. The IRS disallowed the fabricated expenses and significantly reduced the amount of the EITC in each year. The IRS calculated tax deficiencies of $3,802 in 2008, $4,123 in 2009, and $4,304 in 2010.

**Customer 2**

40.     McClendon prepared Customer 2's 2008, 2009, and 2010 federal income tax returns. McClendon is identified as the paid preparer on each of those tax returns.

41.     For all three years, Customer 2 earned only wage income (reported on IRS Form W-2) and pension income (reported on IRS Form 1099-R). Customer 2 provided McClendon with his/her W-2 and 1099-R forms in each year and the income was properly reported on Customer 2's tax returns.

42.     McClendon falsely reported that Customer 2 had a Schedule C home healthcare business and claimed business expenses in excess of $18,000 in each year. For those tax years, Customer 2 did not have a Schedule C business or a home healthcare business. Customer 2 did not tell McClendon that he/she operated such a business and was not aware that a Schedule C business was claimed on his/her tax returns.

43.     McClendon improperly claimed Customer 2's grandchild as a dependent, even though Customer 2 told McClendon that the grandchild only lived with him/her for three months out of the year, an insufficient amount of time to claim the grandchild as a dependent or qualifying child for the purposes of the EITC.

- 10 -

44.     By reporting false expenses and improperly claiming a dependent, McClendon falsely claimed that Customer 2 qualified for EITC and improperly inflated Customer 2's refunds.

45.     The IRS examined Customer 2's 2008, 2009, and 2010 federal income tax returns. Customer 2's claimed dependent and dependent-based credits, as well as the claimed Schedule C businesses expenses, were disallowed.

46.     The IRS' examination resulted in tax deficiencies for Customer 2 of $7,198 in 2008, $7,543 in 2009, and $8,563 in 2010.

**Customer 3**

47.     McClendon prepared Customer 3's 2009 and 2010 federal income tax returns. McClendon is identified as the paid preparer on each of those tax returns.

48.     Customer 3 informed McClendon that his/her only sources of income for those tax years were his/her W-2 wage income and 1099-R pension income. Customer 3's tax returns for 2009 and 2010 correctly reported the W-2 and 1099-R pension income.

49.     McClendon falsely claimed that Customer 3 owned a daycare business with Schedule C business expenses in excess of $20,000 in each year. Customer 3 did not tell McClendon that he/she had a daycare business nor did Customer 3 tell McClendon that he/she had any business expenses for 2009 or 2010.

50.     McClendon's falsely claimed expenses improperly reduced Customer 3's earned income and improperly increased the claimed EITC.

51.     The IRS examined Customer 3's 2009 and 2010 federal income tax returns. The IRS disallowed the claimed business expenses and reduced the claimed EITC resulting in tax deficiencies of $9,903 in 2009, and $7,299 in 2010. Until the IRS' examination, Customer 3 was

not aware that McClendon claimed large Schedule C expenses on his/her 2009 and 2010 tax returns.

**Customer 4**

52.     Harrington prepared Customer 4's 2011, 2012, and 2013 federal income tax returns. Harrington is identified as the paid preparer on all three of those tax returns.

53.     Customer 4 told Harrington that he/she was married and lived with his/her spouse in 2011, 2012, and 2013.   In spite of this statement, Harrington improperly claimed that Customer 4's filing status was Head of Household thereby claiming an incorrect filing status in order to improperly inflate Customer 4's refund.

54.     Customer 4 told Harrington that he/she braided hair in 2011, 2012, and 2013 and made approximately $8,400 each year. Harrington falsely claimed that Customer 4 earned more than twice as much income on each of Customer 4's federal income tax returns, improperly maximizing the EITC.

55.     Harrington's improperly claimed filing status, Schedule C income, and EITC generated inflated refunds totaling $5,566 in 2011, $5,725 in 2012, and $4,977 in 2013.

**Customer 5**

56.     Harrington prepared Customer 5's 2011, 2012, 2013, and 2014 tax returns. Harrington is identified as the paid preparer on all four of those tax returns.

57.     Customer 5 told Harrington that his/her only source of income for those four tax years was W-2 wage income. Customer 5 stated that he/she provided Harrington with his/her W-2 information by email each year and did not meet with Harrington in person to prepare his/her tax returns.  Customer 5's tax returns for those years correctly reported the W-2 wages.

16339196.1

58.     Customer 5 never performed hair braiding or styling and did not tell Harrington that he/she made income by performing or providing this service for others. Despite this, Harrington falsely claimed Schedule C income for a hair braiding business on Customer 5's 2011, 2012, 2013, and 2014 federal income tax returns.

59.     By fabricating Schedule C income, Harrington improperly maximized Customer 5's claimed EITC and falsely inflated Customer 5's refunds in each year. The inflated refunds Harrington claimed on Customer 5's federal income tax returns totaled $5,192 in 2011, $5,648 in 2012, $6,153 in 2013, and $7,460 in 2014.

**<u>Customer 6</u>**

60.     McClendon prepared Customer 6's 2011, 2012, and 2013 federal income tax returns. McClendon is listed as the paid preparer on all three of those tax returns.

61.     Customer 6 told McClendon that his/her only source of income for those three tax years was W-2 wage income. Customer 6 provided McClendon his/her W-2 wage income statements. Customer 6's W-2 wage income as shown on the statement was reported on Customer 6's tax returns for those tax years.

62.     McClendon asked Customer 6 if he/she had a daycare business. Customer 6 told McClendon he/she did not have a daycare business and Customer 6 never provided McClendon with any documents for such a business. Despite that, McClendon fabricated a Schedule C "day care services" business claiming business expenses in excess of $20,000 in each of the three years.

63.     The fabricated "day care services" expenses McClendon claimed on Customer 6's tax returns significantly reduced his/her taxable income and inflated his/her refund. The inflated

- 13 -

16339196.1

refunds claimed on Customer 6's tax returns totaled $2,712 in 2011, $3,335 in 2012, and $3,300 in 2013.

### Customer 7

64.     Harrington prepared Customer 7's 2011, 2012, and 2013 federal income tax returns. Harrington is listed as the paid preparer on each of those three tax returns.

65.     Customer 7 provided Harrington with his/her W-2 wage income statements for those three years. Customer 7's W-2 wage income as shown on the W-2 statements was reported on each of the tax returns for those years.

66.     Customer 7 did not own a Schedule C construction business in any of the three years, nor did he/she tell Harrington that he/she owned a Schedule C construction business. Despite that, Harrington falsely reported that Customer 7 owned a Schedule C construction business with expenses exceeding $20,000 in each of the three years.

67.     The fabricated Schedule C construction business expenses Harrington claimed on Customer 7's tax returns significantly reduced Customer 7's taxable income and inflated his/her refund. The inflated refunds Harrington claimed on Customers 7's tax returns totaled $8,470 in 2011, $2,650 in 2012, and $1,714 in 2013.

### Customer 8

68.     McClendon prepared Customer 8's 2011, 2012, and 2013 federal income tax returns. McClendon is listed as the paid preparer on each of those tax returns.

69.     In each of the three years, Customer 8 provided McClendon his/her W-2 wage income statements, social security, and 1099-R pension income statements. Customer 8 had income of approximately $40,000 in each of the three tax years that was reported on his/her tax returns for those years.

16339196.1

70.     Customer 8 did not own a home healthcare business and did not tell McClendon that he/she operated a home healthcare business. Nevertheless, McClendon included a fabricated Schedule C "home health care" business and claimed expenses exceeding $14,000 on each of Customer 8's 2011, 2012, and 2013 federal income tax returns.

71.     McClendon's fraudulently claimed expenses significantly reduced Customer 8's taxable income and inflated his/her refund. The inflated refunds McClendon claimed on Customer 8's tax returns totaled $4,706 in 2011, $3,743 in 2012, and $3,715 in 2013.

**Customer 9**

72.     McClendon prepared Customer 9's 2015 and 2016 federal income tax returns. McClendon is listed as the paid preparer on those tax returns.

73.     In both years, Customer 9 provided McClendon his/her W-2 wage income statements and receipts for his/her payments of mortgage interest, personal property taxes, and real estate taxes.

74.     Customer 9 did not own a "mechanic" business and did not tell McClendon that he/she operated a "mechanic" business. Nevertheless, McClendon included a fabricated Schedule C "mechanic" business on each of Customer 9's 2015 and 2016 federal income tax returns. McClendon reported that in 2015 the fabricated Schedule C business had no income and claimed expenses exceeding $20,000. McClendon reported that in 2016, the fabricated Schedule C business reported approximately $3,000 of income and claimed expenses exceeding $25,000.

75.     McClendon's fraudulently claimed expenses significantly reduced Customer 9's taxable income and inflated his/her refund. The inflated refunds McClendon claimed on Customer 9's tax returns totaled $5,025 in 2015 and $7,364 in 2016.

16339196.1

**Customer 10**

76.      Harrington prepared Customer 10's 2016 federal income tax return. Harrington is listed as the paid preparer on the tax return.

77.      Customer 10 provided Harrington his/her W-2 wage income statement. Customer 10's W-2 wage income as shown on the W-2 statement was reported on Customer 10's 2016 tax return. Customer 10 earned approximately $6,500 in 2016.

78.      Customer 10 never performed hair braiding or styling and did not tell Harrington that he/she made income performing this service for others. Despite this, Harrington falsely claimed over $3,000 of Schedule C income for a hair braiding business on Customer 10's 2016 federal income tax return.

79.      Customer 10 did not have a dependent or qualifying child in 2016 and did not tell Harrington that he/she had a dependent or qualifying child in 2016. Harrington improperly claimed Customer 10's niece as Customer 10's daughter in order to improperly claim the EITC on Customer 10's 2016 tax return. Customer 10 told Harrington that he/she watched his/her niece sometimes and did not provide more than half of the niece's support, insufficient to claim a niece as a dependent or qualifying child for purposes of the EITC. Customer 10 was not aware that Harrington claimed the niece as his/her daughter on the 2016 federal income tax return.

80.      By reporting false income and improperly claiming a dependent, Harrington falsely claimed that Customer 10 qualified for EITC and improperly inflated Customer 10's tax refund. The inflated refund Harrington claimed on Customer 10's 2016 tax return totaled $4,018.

**Customer 11**

81.      Harrington prepared Customer 11's 2016 federal income tax return. Harrington is listed as the paid preparer on the tax return.

16339196.1

82.     Customer 11 provided Harrington with his/her W-2 wage income statements for that year. Customer 11's W-2 wage income as shown on the W-2 statements was reported on Customer 11's 2016 tax return.

83.     Customer 11 earned income styling people's hair in 2016 and told Harrington that he/she made income by providing this service for others. Customer 11 never told Harrington how much income he/she made styling people's hair that year and Harrington never inquired. Nevertheless, Harrington falsely claimed $11,807 of Schedule C income for a hair braiding business on Customer 11's 2016 federal income tax return.

84.     Harrington's fraudulently claimed Schedule C income increased Customer 11's taxable income and inflated his/her refund. Harrington claimed an inflated refund on Customer 11's 2016 tax return totaling $ 6,256.

85.     Harrington did not provide Customer 11 a copy of his/her 2016 federal income tax return.

**Unconscionable and Undisclosed Fees**

86.     Harrington and McClendon routinely charge their customers unconscionably high fees to prepare tax returns. Harrington and McClendon often fail to disclose the actual fees to their customers. Harrington and McClendon have intentionally deceived customers regarding the fees charged for the preparation of tax returns.

87.     For example: Customer 2 paid McClendon over $1,000 to prepare each of his/her federal tax returns for the tax years 2008, 2009, and 2010. Customer 3 paid McClendon over $1,600 to prepare his/her 2010 tax return. Customer 4 paid Harrington over $1,000 to prepare his/her 2013 tax return.

16339196.1

88.     Since at least 2014, Harrington and McClendon have contracted with third-party financial institutions to offer tax refund products to allow their customers to delay paying tax preparation fees until the IRS issues their refund.

89.     The third-party financial institutions facilitate this delayed payment service by creating a temporary bank account in the name of each contracting customer in order to receive each customer's refund disbursements from the IRS. Once the financial institution receives a customer's tax refund, the financial institution deducts from the refund the financial institution's service fees and the preparer's fees. The financial institution then disburses the tax preparer's fees (including both preparation and "administrative" fees charged by the preparer) to an account designated by the preparer and the remaining balance of the customer's refunds (the "net refund") to the customer in the manner designated. If a customer chooses to have their net refund disbursed to a debit card instead of to a bank account or issued to a check, the tax preparer is required to provide the debit card to the customer when the return is prepared.

90.     Many of Harrington's customers' net refunds were issued to debit cards. In some cases, Harrington improperly kept her customers' debit cards in order to make unauthorized withdrawals from those customers' net refund disbursements. In those cases, Harrington knew when to improperly activate those customers' debit cards because she received notice from the financial institution each time it disbursed tax preparation fees for a customer. This notice also informed Harrington that the financial institution disbursed the net refund to a customer's debit card. Harrington improperly activated certain customers' debit cards by setting the customer's debit card PIN and then used that PIN to make unauthorized withdrawals for Harrington's own benefit.

16339196.1

**Customer 5 (continued)**

91.     For example, Customer 5 agreed to pay Harrington $350 to prepare each of his/her 2011 through 2014 tax returns. Customer 5 agreed in each of those years to have those fees taken directly out of his/her refunds and have the remainder of his/her refund deposited onto a debit card.

92.     On the dates Harrington prepared Customer 5's 2011 through 2014 tax returns, Harrington did not provide Customer 5 a copy of his/her tax returns or the debit cards that the bank would use to load his/her net refunds. Instead, Harrington told Customer 5 that he/she would need to pick up the debit cards from Harrington after the bank loaded the funds onto the card. In each year, Customer 5 did not create a PIN for the debit cards and Harrington provided Customer 5 with the PINs for each card.

93.     Harrington told Customer 5 the amount of his/her net refund. Harrington told Customer 5 that his/her net refund was approximately $2,500 for tax year 2011, $2,002 for tax year 2012, $2,900 for tax year 2013, and $4,200 for tax year 2014. Customer 5 received a debit card with the verbally communicated net refund amounts loaded onto his/her debit card.

94.     Customer 5 was not aware that in each of those years, the refund amounts disbursed by the IRS, with respect to Customer 5, were thousands of dollars more than the net refund amounts Harrington told Customer 5. The difference was significantly more than the agreed-upon fees of $350.

95.     The following chart summarizes the net refund Harrington told Customer 5 to expect compared to the refund amount actually disbursed by the IRS:

16339196.1

| Tax Year | 2011 | 2012 | 2013 | 2014 |
|---|---|---|---|---|
| **Net Refund Harrington Communicated to and provided to Customer 5** | $2,500 | $2,002 | $2,900 | $4,200 |
| **Actual Refund Disbursed by IRS** | $5,192 | $5,648 | $6,153 | $7,460 |
| **Difference** | **$2,692** | **$3,646** | **$3,253** | **$3,260** |

### Customer 10 (continued)

96.     Customer 10 agreed to pay Harrington $400 to prepare his/her 2016 tax return and have those fees taken out of his/her refund. Customer 10 agreed to receive his/her net refund on a debit card.

97.     On the date Harrington prepared Customer 10's 2016 tax return, Harrington did not provide Customer 10 the debit card that the bank would use to load his/her net refund. Instead, Harrington told Customer 10 that he/she would need to pick up the debit card from Harrington after the bank loaded the funds onto the card.

98.     Harrington provided Customer 10 with a debit card with a balance of approximately $3,200. Customer 10 did not create a PIN for the debit card. Harrington provided Customer 10 with the PIN to access the debit card.

99.     The IRS issued Customer 10 a refund of $4,108 for the 2016 tax year, $908 more than the amount Customer 10 received on the debit card. Customer 10 did not know why more than $400 was deducted from his/her refund.

**Customer 11 (continued)**

100.     Customer 11 agreed to receive his/her 2016 tax refund on a debit card. Harrington told Customer 11 that he/she would receive a refund of approximately $4,600. Harrington never discussed the fees she would charge Customer 11 for preparing his/her 2016 tax return.

101.     On the date Harrington prepared Customer 11's 2016 tax return, Harrington did not provide Customer 11 a copy of his/her 2016 tax return or the debit card that the bank would use to load his/her net refund. Instead, Harrington told Customer 11 that he/she would need to pick up the debit card from Harrington after the bank loaded the funds onto the card.

102.     Harrington provided Customer 11 with a debit card with a balance of approximately $4,600. Customer 11 did not create a PIN for the debit card. Harrington provided Customer 11 with the PIN to access the debit card.

103.     The IRS issued Customer 11 a refund of $6,256 for the 2016 tax year, $1,656 more than the amount Customer 11 received on the debit card. Customer 11 did not know why $1,656 was deducted from his/her refund.

### Harm to the Public and the United States

104.     The Defendants' preparation of false tax returns harms the public and the United States Treasury. These practices harm the public because the Defendants prepare false tax returns that understate their customers' correct income tax liabilities and illegally cause customers to incorrectly report their federal tax liabilities and underpay their taxes. Defendants' conduct harms the United States by causing lost tax revenue.

105.     The IRS examined 51 income tax returns prepared by McClendon for the tax years 2008, 2009 and 2010 and made adjustments on each tax return totaling $259,268.  The IRS reviewed over 40 tax returns prepared by Harrington and McClendon for the tax years since

16339196.1

2011 and found underreported tax liabilities exceeding $130,000. However, it is likely that the harm is significantly higher because the IRS is not able to review every single tax return prepared by Harrington and McClendon.

106.    Harrington and McClendon continued to prepare false tax returns, even though they knew that the IRS was scrutinizing their activities in prior years. As recently as this past filing season, Defendants continued to file tax returns claiming bogus "income" and "losses" in order to qualify their customers for the EITC and increase their customers' tax refunds. Defendants have already prepared tax returns for customers this year.

107.    Harrington's improper conduct expanded to include improperly accessing debit cards intended to disburse her customer's net refunds and making unauthorized withdrawals to improperly obtain larger fees.

108.    Harrington and McClendon's customers examined by the IRS are liable for the repayment of wrongful refunds, including the portion of the refund that Harrington and McClendon subtracted in fees. Customers may also have to pay additional fees to other tax return preparers to file amended tax returns to correct the fraudulent tax returns prepared and filed by Harrington and McClendon.

109.    Harrington and McClendon's customers have been harmed because they relied on Harrington and McClendon to prepare proper tax returns. Instead, customers' tax returns substantially understated their correct tax liabilities after paying unconscionably high fees to have their tax returns prepared. As a result, many customers, who are often low to moderate income taxpayers, now face large income tax debts and may be liable for sizeable penalties and interest.

16339196.1

110.    Other customers are harmed by Harrington and McClendon's practices because they have lost or become ineligible for federal and/or state benefits due to the false claims that Harrington and McClendon made on their tax returns.

111.    Harrington and McClendon's misconduct further harms the United States and the public by requiring the IRS to devote resources to detecting the misconduct and assessing and collecting lost tax revenues from their customers.  Consequently, identifying and recovering all lost tax revenues resulting from Harrington and McClendon's illegal activities may be impossible.

112.    Harrington and McClendon's conduct also harms honest tax return preparers who refuse to engage in such illegal conduct. Honest tax return preparers unfairly lose business to Harrington and McClendon due to their willingness to break the law. Many customers return year after year to have their tax returns prepared by Harrington and McClendon because they receive improperly inflated refunds.

113.    Harrington and McClendon's misconduct also harms the public at large by undermining public confidence in the federal tax system and encouraging widespread violations of the internal revenue laws.

114.    The harm to the government and the public will continue and likely increase unless Harrington and McClendon are enjoined because, given the seriousness and pervasiveness of their illegal conduct, without an injunction they are likely to continue preparing false and fraudulent federal tax returns for customers.

115.    An injunction will serve the public interest because it will put a stop to their conduct and the harm that such conduct causes the United States and its citizens.

16339196.1

## COUNT I: INJUNCTION UNDER I.R.C. § 7407

116.    The United States incorporates by reference the allegations contained in paragraphs 1 through 115.

117.    Section 7407 of the Internal Revenue Code authorizes a district court to enjoin a tax return preparer from engaging in conduct subject to penalty under 26 U.S.C. §§ 6694 or 6695 or engaging in any other fraudulent or deceptive conduct that substantially interferes with the proper administration of the internal revenue laws, if the court finds that the preparer has engaged in such conduct and that injunctive relief is appropriate to prevent the recurrence of the conduct. Additionally, if the court finds that a preparer has continually or repeatedly engaged in such conduct and that a narrow injunction (i.e., prohibiting only that specific enumerated conduct) would not be sufficient to prevent that person's interference with the proper administration of the internal revenue laws, the court may enjoin the person from further acting as a tax return preparer.

118.    Harrington, McClendon, and Goodlink have continually and repeatedly engaged in conduct subject to penalty under 26 U.S.C. § 6694(a) by preparing federal income tax returns that understate their customers' liabilities based on unreasonable positions, including but not limited to falsifying businesses and/or business income and claiming false and/or unsubstantiated expenses in an amount to which their customers are not entitled, that the Defendants knew or reasonably should have known were unreasonable.

119.    Harrington, McClendon, and Goodlink have continually and repeatedly engaged in conduct subject to penalty under 26 U.S.C. § 6694(b) by preparing federal income tax returns that understate their customers' liabilities based on willful conduct or reckless or intentional disregard of rules or regulations.

16339196.1

120.     Harrington, McClendon, and Goodlink have continually and repeatedly engaged in conduct subject to penalty under 26 U.S.C. § 6695(g) by preparing federal income tax returns that understate their customers' liabilities based on their failure to comply with due diligence requirements. The Treasury regulations promulgated under 26 U.S.C. § 6695(g) prohibit a tax return preparer from claiming the EITC without first conducting proper due diligence and documenting his or her compliance with the due diligence requirements. *See* 26 C.F.R. § 1.6995-2 (2016). Harrington, McClendon, and Goodlink failed to comply with the due diligence requirements for the EITC.

121.     Harrington, McClendon, and Goodlink's willingness to falsify information to obtain the EITC for their customers shows a reckless and/or intentional disregard for the IRS rules and regulations. Harrington, McClendon, and Goodlink have continually and repeatedly prepared federal income tax returns that claim the EITC for which they not only have not conducted or documented the required due diligence procedures, but for which they flouted these requirements by fabricating phony business income or expenses in order to improperly claim the EITC.

122.     Harrington, McClendon, and Goodlink's continual and repeated violations of 26 U.S.C. §§ 6694 and 6695(g) fall within 26 U.S.C. § 7407(b)(1)(A) and (D), and thus Harrington, McClendon, and Goodlink are subject to an injunction under 26 U.S.C. § 7407.

123.     If they are not enjoined, Harrington, McClendon, and Goodlink are likely to continue to prepare and file false tax returns.

124.     Harrington, McClendon, and Goodlink's longstanding, continual and repeated conduct, including their bogus claims of business income and expenses, the EITC, and their rejected false claims even in the face of an IRS investigation into their practices, subjects them to

16339196.1

an injunction under 26 U.S.C. § 7407, and demonstrates that a narrow injunction prohibiting only specific conduct would be insufficient to prevent Harrington, McClendon, and Goodlink's interference with the proper administration of the internal revenue laws. Thus, Harrington, McClendon, and Goodlink should be permanently barred from acting as tax return preparers.

## COUNT II: INJUNCTION UNDER I.R.C. § 7408

125.   The United States incorporates by reference the allegations contained in paragraphs 1 through 124.

126.   Section 7408 of the Internal Revenue Code authorizes a district court to enjoin any person from engaging in conduct subject to penalty under 26 U.S.C. § 6701 if injunctive relief is appropriate to prevent recurrence of such conduct.

127.   Section 6701(a) of the Internal Revenue Code penalizes any person who aids or assists in, procures, or advises with respect to the preparation or presentation of a federal tax return, refund claim, or other document knowing (or having reason to believe) that it will be used in connection with any material matter arising under the internal revenue laws and knowing that if it is so used it will result in an understatement of another person's tax liability.

128.   Harrington, McClendon, and Goodlink prepare federal tax returns for customers that they know will understate their correct tax liabilities, because Harrington, McClendon, and Goodlink knowingly prepare tax returns claiming improper income, expenses, deductions, and credits. Accordingly, Harrington, McClendon, and Goodlink are subject to penalty under 26 U.S.C. § 6701.

129.   If the Court does not enjoin Harrington, McClendon, and Goodlink, they are likely to continue to engage in conduct subject to penalty under 26 U.S.C. § 6701. Defendant's preparation of tax returns claiming improper income, expenses, deductions, and credits is

16339196.1

widespread over many customers and tax years. Injunctive relief is therefore appropriate under 26 U.S.C. § 7408.

## COUNT III: INJUNCTION UNDER I.R.C. § 7402(a)

130.     The United States incorporates by reference the allegations contained in paragraphs 1 through 129.

131.     Section 7402 of the Internal Revenue Code authorizes a district court to issue orders of injunction as may be necessary or appropriate for the enforcement of the internal revenue laws.

132.     Harrington, McClendon, and Goodlink, through the actions described above, including, but not limited to, intentionally understating their customers' tax liabilities and charging unconscionable and undisclosed fees for the preparation of federal tax returns that intentionally understate their customers' tax liabilities, have engaged in conduct that substantially interferes with the enforcement of the internal revenue laws.

133.     Unless enjoined, Harrington, McClendon, and Goodlink are likely to continue to engage in such improper conduct and interfere with the enforcement of the internal revenue laws. If Harrington, McClendon, and Goodlink are not enjoined from engaging in fraudulent and deceptive conduct, the United States will suffer irreparable injury by wrongfully providing federal income tax refunds to individuals not entitled to receive them.

134.     While the United States will suffer irreparable injury if Harrington, McClendon, and Goodlink are not enjoined, Harrington, McClendon, and Goodlink will not be harmed by being compelled to obey the law.

135.     Enjoining Harrington, McClendon, and Goodlink is in the public interest because an injunction, backed by the Court's contempt powers if needed, will stop Harrington,

16339196.1

McClendon, and Goodlink's illegal conduct and the harm it causes the United States and Defendants' customers.

136.    The court should impose injunctive relief under 26 U.S.C. § 7402(a).

**WHEREFORE**, the United States of America prays for the following relief:

A.    That the Court find that Cherlynn Harrington, Linda McClendon, Goodlink, LLC d/b/a Goodlink Tax Services, and Goodlink, Inc. d/b/a Goodlink Tax Services have continually and repeatedly engaged in conduct subject to penalty under 26 U.S.C. §§ 6694 and 6695, and have continually and repeatedly engaged in other fraudulent or deceptive conduct that substantially interferes with the administration of the tax laws, and that a narrower injunction prohibiting only this specific misconduct would be insufficient;

B.    That the Court, pursuant to 26 U.S.C. § 7407, enter a permanent injunction prohibiting Cherlynn Harrington, Linda McClendon, Goodlink, LLC d/b/a Goodlink Tax Services, and Goodlink, Inc. d/b/a Goodlink Tax Services from acting as federal tax return preparers;

C.    That the Court find that Cherlynn Harrington, Linda McClendon, Goodlink, LLC d/b/a Goodlink Tax Services, and Goodlink, Inc. d/b/a Goodlink Tax Services have engaged in conduct subject to a penalty under 26 U.S.C. § 6701, and that injunctive relief under 26 U.S.C. § 7408 is appropriate to prevent a recurrence of that conduct;

D.    That the Court find that Cherlynn Harrington, Linda McClendon, Goodlink, LLC d/b/a Goodlink Tax Services, and Goodlink, Inc. d/b/a Goodlink Tax Services have engaged in conduct that interferes with the enforcement of the internal revenue laws, and that injunctive relief is appropriate to prevent the recurrence of that conduct pursuant to the Court's inherent equity powers and 26 U.S.C. § 7402(a);

16339196.1

E.      That the Court, pursuant to 26 U.S.C. §§ 7402(a), 7407, and 7408, enter a permanent injunction prohibiting Cherlynn Harrington, Linda McClendon, Goodlink, LLC d/b/a Goodlink Tax Services, and Goodlink, Inc. d/b/a Goodlink Tax Services, and all those in active concert or participation with them, from:

1.      acting as a federal tax return preparer or requesting, assisting in, advising with respect to, or directing the preparation or filing of federal tax returns, amended tax returns, or other related documents or forms for any person or entity other than themselves;

2.      owning, operating, managing, working for, profiting from, receiving fees or remuneration from, volunteering for, or controlling a tax-return-preparation business;

3.      engaging in any other activity subject to penalty under 26 U.S.C. §§ 6694, 6695, 6701, or any other penalty provision in the Internal Revenue Code;

4.      using, maintaining, renewing, obtaining, transferring, selling, or assigning any IRS Preparer Tax Identification Number ("PTIN") and/or IRS Electronic Filing Identification Number ("EFIN"), or any other IRS service or program by which one prepares or files tax returns; and

5.      engaging in any conduct that substantially interferes with the proper administration of the internal revenue laws.

F.      That the Court, pursuant to 26 U.S.C. §§ 7402(a), 7407, and 7408, enter an order requiring Cherlynn Harrington, Linda McClendon, Goodlink, LLC d/b/a Goodlink Tax Services, and Goodlink, Inc. d/b/a Goodlink Tax Services to contact, within 30 days of the Court's order, by United States mail and, if an e-mail address is known, by e-mail, all persons for whom they

16339196.1

prepared federal tax returns or claims for a refund for tax years beginning in 2008 and continuing through this litigation to inform them of the permanent injunction entered against them, including sending a copy of the Order of Permanent Injunction but not enclosing any other documents or enclosures unless agreed by counsel for the United States or approved by the Court, and provide to counsel for the United States within 30 days a signed and dated certification that they so informed these persons.

G.      That the Court, pursuant to 26 U.S.C. §§ 7402(a), 7407, and 7408, enter an order requiring Cherlynn Harrington, Linda McClendon, Goodlink, LLC d/b/a Goodlink Tax Services, and Goodlink, Inc. d/b/a Goodlink Tax Services to produce to counsel for the United States, within 30 days of the Court's order, a list that identifies by name, social security number, address, e-mail address, and telephone number and tax period(s) for all persons for whom they prepared federal tax returns or claims for a refund for tax years beginning with 2008 and continuing through this litigation.

H.      That the Court, pursuant to 26 U.S.C. §§ 7402(a), 7407, and 7408, enter an order requiring Cherlynn Harrington, Linda McClendon, Goodlink, LLC d/b/a Goodlink Tax Services, and Goodlink, Inc. d/b/a Goodlink Tax Services to provide a copy of the Court's order to all of Cherlynn Harrington, Linda McClendon, Goodlink, LLC d/b/a Goodlink Tax Services, and Goodlink, Inc. d/b/a Goodlink Tax Services' principals, officers, managers, employees, volunteers, and independent contractors (if any) within 15 days of the Court's order, and provide to counsel for the United States within 30 days a signed and dated acknowledgement of receipt of the Court's order for each person whom Cherlynn Harrington, Linda McClendon, Goodlink, LLC d/b/a Goodlink Tax Services, and Goodlink, Inc. d/b/a Goodlink Tax Services provided a copy of the Court's order;

16339196.1

I.      That the Court retain jurisdiction over Cherlynn Harrington, Linda McClendon, Goodlink, LLC d/b/a Goodlink Tax Services, and Goodlink, Inc. d/b/a Goodlink Tax Services and over this action to enforce any permanent injunction entered against them;

J.      That the United States be entitled to conduct discovery to monitor Cherlynn Harrington, Linda McClendon, Goodlink, LLC d/b/a Goodlink Tax Services, and Goodlink, Inc. d/b/a Goodlink Tax Services's compliance with the terms of any permanent injunction entered against them; and

K.      That the Court grant the United States such other and further relief; including costs, as is just and reasonable.

Dated:  March 27, 2018

Respectfully submitted,

JEFFREY B. JENSEN
United States Attorney

RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General

*s/ Natalie M. Loebner*
NATALIE M. LOEBNER
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 7238
Washington, D.C.  20044-0683
Facsimile: (202) 514-6770
Telephone: (202) 616-3865
Natalie.M.Loebner@usdoj.gov
Washington State Bar No. 44560
Federal Bar No. 44650WA
*Attorney for the United States*

16339196.1

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

UNITED STATES OF AMERICA

## DEFENDANTS

Cherlyn Harrington, Linda McClendon, Goodlink, LLC dba Goodlink Tax Services, and Goodlink, Inc. dba Goodlink Tax Services

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   St. Louis
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Natalie M. Loebner, Department of Justice, Tax Division, PO BOX 7238, Ben Franklin Station, Washington, DC 20044
(202) 616-3865

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☒ 1  U.S. Government Plaintiff | ☐ 3  Federal Question *(U.S. Government Not a Party)* |
| ☐ 2  U.S. Government Defendant | ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 367 Health Care/ | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 340 Marine | | | | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| | ☐ 345 Marine Product Liability | | | ☐ 840 Trademark | |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | | ☐ 863 DIWC/DIWW (405(g)) | |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 751 Family and Medical Leave Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| | | | | | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☒ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - Other | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | ☐ 448 Education | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
26 U.S.C. 7402(a), 7407, and 7408
Brief description of cause:
Seeking permanent injunction from preparing federal taxes

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**  ☐ Yes  ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE
03/27/2018

SIGNATURE OF ATTORNEY OF RECORD
*[signature]*

**FOR OFFICE USE ONLY**

| RECEIPT # | AMOUNT | APPLYING IFP | JUDGE | MAG. JUDGE |
|---|---|---|---|---|
| | | | | |

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

UNITED STATES OF
AMERICA                     ,          )
                                       )
                                       )
            Plaintiff,                 )
                                       )
      v.                               )     Case No. 4:18-cv-460
                                       )
CHERLYNN HARRINGTON,                   )
et. al.                     ,          )
                                       )
            Defendant,                 )
                                       )

**ORIGINAL FILING FORM**

**THIS FORM MUST BE COMPLETED AND VERIFIED BY THE FILING PARTY
WHEN INITIATING A NEW CASE.**

☐    THIS SAME CAUSE, OR A SUBSTANTIALLY EQUIVALENT COMPLAINT, WAS

PREVIOUSLY FILED IN THIS COURT AS CASE NUMBER _____

AND ASSIGNED TO THE HONORABLE JUDGE _____.

☐    THIS CAUSE IS RELATED, BUT IS NOT SUBSTANTIALLY EQUIVALENT TO ANY

PREVIOUSLY FILED COMPLAINT.  THE RELATED CASE NUMBER IS _____ AND

THAT CASE WAS ASSIGNED TO THE HONORABLE _____.  THIS CASE MAY,

THEREFORE, BE OPENED AS AN ORIGINAL PROCEEDING.

☒    NEITHER THIS SAME CAUSE, NOR A SUBSTANTIALLY EQUIVALENT

COMPLAINT, HAS BEEN PREVIOUSLY FILED IN THIS COURT, AND THEREFORE

MAY BE OPENED AS AN ORIGINAL PROCEEDING.

**The undersigned affirms that the information provided above is true and correct.**

Date: 03/27/2018 _____

_____
Signature of Filing Party

AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

_____ District of _____

|  |  |
|---|---|
| _____ <br> *Plaintiff* <br><br> v. <br><br> _____ <br> *Defendant* | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

Civil Action No.

**SUMMONS IN A CIVIL ACTION**

To: *(Defendant's name and address)*

        A lawsuit has been filed against you.

        Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

        If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____                    _____

                                                                        *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 12/09)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❐ I returned the summons unexecuted because _____ ; or

❐ Other *(specify):*

.

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

_____ District of _____

|  |  |
|---|---|
| _____<br>*Plaintiff*<br><br>v.<br><br>_____<br>*Defendant* | )<br>)<br>)<br>)  Civil Action No.<br>)<br>)<br>) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 12/09)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❐  I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❐  I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❐  I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❐  I returned the summons unexecuted because _____ ; or

❐  Other *(specify):*

_____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

_____ District of _____

|  |  |  |
|---|---|---|
| _____ | ) | |
| *Plaintiff* | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| _____ | ) | |
| *Defendant* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

 

 

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

 

 

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____        _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 12/09)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❒  I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❒  I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❒  I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❒  I returned the summons unexecuted because _____ ; or

❒  Other *(specify):*

.

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

_____ District of _____

| | | |
|---|---|---|
| _____ | ) | |
| *Plaintiff* | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| _____ | ) | |
| *Defendant* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 12/09)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏  I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏  I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏  I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏  I returned the summons unexecuted because _____ ; or

❏  Other *(specify):*

.

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc: